IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PINCHAS RAUL,<br><br>             Plaintiff,<br><br>      v.<br><br>BANK OF COMMERCE HOLDINGS, LYLE L. TULLIS, ORIN N. BENNETT, RANDALL S. ESLICK, JOSEPH Q. GIBSON, JON W. HALFHIDE, DAVID J. INDERKUM, LINDA J. MILES, DIANE D. MILLER, KARL L. SILBERSTEIN, and TERENCE J. STREET,<br><br>             Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Pinchas Raul ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Bank of Commerce Holdings ("BOCH" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning BOCH and the Defendants.

**SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against BOCH and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by Columbia Banking Systems, Inc. ("Columbia") (the "Proposed Transaction").

2. On June 23, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Columbia. Pursuant to the terms of the Merger Agreement BOCH will merge with an into Columbia, with Columbia as the surviving entity (the "Parent Merger"). Following the Parent Merger Merchants Bank of Commerce ("Merchants Bank"), a wholly owned subsidiary of BOCH, will merge with and into Columbia State Bank, a wholly owned subsidiary of Columbia, ("Columbia Bank"), with Columbia Bank surviving the merger (the "Bank Merger"). Pursuant to the terms of the Merger Agreement the Company's shareholders will have the right to receive 0.40 shares of Columbia common stock for each share of BOCH they own (the "Merger Consideration").

3. On August 17, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against BOCH and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to BOCH

shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of BOCH shares.

9. Defendant BOCH is incorporated under the laws of California and has its principal executive offices located at 555 Capitol Mall, Suite 1255, Sacramento, California. The Company's common stock trades on the NASDAQ under the symbol "BOCH."

10. Defendant Lyle L. Tullis ("Tullis") is and has been the Chairman of the Board of BOCH at all times during the relevant time period.

3

11. Defendant Orin N. Bennett ("Bennett") is and has been a BOCH director at all times during the relevant time period.

12. Defendant Randall S. Eslick ("Eslick") is and has been the Chief Executive Officer ("CEO"), President, and a director of BOCH at all times during the relevant time period.

13. Defendant Joseph Q. Gibson ("Gibson") is and has been a BOCH director at all times during the relevant time period.

14. Defendant Jon W. Halfhide ("Halfhide") is and has been a BOCH director at all times during the relevant time period.

15. Defendant David J. Inderkum ("Inderkum") is and has been a BOCH director at all times during the relevant time period.

16. Defendant Linda J. Miles ("Miles") is and has been a BOCH director at all times during the relevant time period.

17. Defendant Diane D. Miller ("Miller") is and has been a BOCH director at all times during the relevant time period.

18. Defendant Karl L. Silberstein ("Silberstein") is and has been a BOCH director at all times during the relevant time period.

19. Defendant Terence J. Street ("Street") is and has been a BOCH director at all times during the relevant time period.

20. Defendants Tullis, Bennett, Eslick, Gibson, Halfhide, Inderkum, Miles, Miller, Silberstein, and Street are collectively referred to herein as the "Individual Defendants."

21. The Individual Defendants, along with Defendant BOCH, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22. BOCH operates as the bank holding company for Merchants Bank, a chartered commercial bank that provides a range of financial services and products for small to medium-sized businesses, and retail customers. The Company accepts various deposit products, such as checking, interest-bearing checking, money market, and savings accounts, as well as certificates of deposit. Its loan products include commercial, commercial real estate, residential real estate, consumer, construction, term, and small business administration loans. In addition, the Company provides sweep arrangements, safe deposit boxes, collection, electronic banking, payroll processing, and ATM and point of sale services. Further, it accepts collateral for loans, real estate, listed and unlisted securities, savings and time deposits, automobiles, machinery and equipment, and other general business assets, such as accounts receivable and inventory. The Company serves customers through ten full-service offices, one limited service office, and a loan production office in northern California.

### The Company Announces the Proposed Transaction

23. On June 23, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> TACOMA, Wash. | SACRAMENTO, Calif., June 23, 2021 (GLOBE NEWSWIRE) -- Columbia Banking System, Inc. (NASDAQ: COLB, "Columbia"), the holding company for Columbia State Bank, and Bank of Commerce Holdings (NASDAQ: BOCH, "Bank of Commerce"), the holding company for Merchants Bank of Commerce, today announced the signing of a definitive agreement to merge Bank of Commerce into Columbia in an all-stock transaction valued at approximately $266.0 million, or $15.72 per share of Bank of Commerce common stock based on Columbia's stock price on June 23, 2021. This transaction represents Columbia's entrance into the California market, and the combined company will have over 150 branches with $19 billion in assets throughout Washington, Oregon, Idaho and California.

5

"We are delighted to welcome Merchants Bank of Commerce clients and employees into the Columbia Bank family, extending our footprint beyond the Northwest and into California," said Clint Stein, Columbia's President and Chief Executive Officer. "We have tremendous respect for the Merchants Bank of Commerce franchise and view this as an opportunity to expand with an organization that aligns with our long-standing commitment to clients and community. Northern California shares many similarities with the Northwest in both metropolitan and rural markets, making expansion into this region a natural extension of our existing footprint. We appreciate how the management team has grown this franchise in a profitable manner and are excited to have them join Columbia to help manage our California expansion."

This transaction is expected to be accretive to Columbia's earnings with 3% accretion to earnings per share in 2022 and 4% accretion in 2023, and 0.3% accretion to tangible book value per share. All locations will continue operations under the Merchants Bank of Commerce brand as a division of Columbia Bank following the close of the merger. Bank of Commerce Chief Executive Officer Randy Eslick will continue leadership of the division in the role of President.

"We are pleased to embark on the next chapter for Merchants Bank of Commerce in partnership with Columbia. Our companies share a common set of cultural values that serve as the foundation of our commitment to our clients and the communities we serve," said Randy Eslick, President and Chief Executive Officer of Bank of Commerce and Merchants Bank of Commerce. "We look forward to continuing to honor those values while offering clients an expansive array of additional products and solutions as part of the Columbia family. Additionally, I am very pleased to continue to lead the same teams of exceptional bankers serving our clients in each of our markets following the close of the merger, ensuring clients continue to enjoy access to the same local expertise and relationships."

Under the terms of the merger agreement, Bank of Commerce shareholders are entitled to receive 0.40 of a share of Columbia common stock for each share of Bank of Commerce's stock subject to certain potential adjustments. Based on Columbia's closing stock price on June 23, 2021, the aggregate merger consideration is valued at $266.0 million, which includes $265.6 million of Columbia common stock to be issued to Bank of Commerce shareholders and $0.4 million of cash to be paid to option holders. The value of the merger consideration will fluctuate until closing based on the value of Columbia's stock.

The agreement was unanimously approved by the Board of Directors of each company. At closing, Bank of Commerce shareholders will own approximately 9% of the combined company. Additionally, Columbia plans to pay $500,000 to small businesses throughout Northern California as part of its Pass It On Project following the close of the merger. The project began in the summer of 2020 as an effort to help support businesses working to recover from statewide stay-at-home orders while providing additional support for the community. The transaction is expected to close in the fourth quarter of 2021, and its

completion is contingent upon approval from BOCH's shareholders, the receipt of other customary regulatory approvals, and other customary closing conditions.

Columbia was advised in this transaction by Keefe, Bruyette & Woods, *A Stifel Company* as financial advisor and Sullivan & Cromwell LLP as legal counsel. Bank of Commerce was advised by Raymond James & Associates, Inc. as financial advisor, and Miller Nash LLP as legal counsel.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

24. On August 17, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Projections

26. The Proxy Statement fails to disclose any financial projections prepared by the Company's management in connection with the Proposed Transaction. Any such projections should be disclosed to the Company's shareholders.

27. In addition, to the extent management's projections contain non-GAAP financial metrics, any supplemental disclosures should include a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

29. The Proxy Statement contains information concerning the background of the Proposed Transaction, but fails to disclose material information concerning such.

30. The Proxy Statement fails to disclose sufficient information concerning the number and nature of all confidentiality agreements entered into between BOCH and any interested third party during the sales process, as well as whether any agreement contained "don't-ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

31. The Proxy Statement fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

32. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Raymond James' Financial Opinion**

33.     The Proxy Statement contains the financial analyses and opinion of Raymond James & Associates, Inc. ("Raymond James") concerning the Proposed Transaction, but fails to provide material information concerning such.

34.     With respect to Raymond James' *Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

35.     With respect to Raymond James' *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

36.     With respect to Raymond James' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's projected free cash flows for the nine months ending December 31, 2021 and the 12 months ending December 31, 2022 through December 31, 2025; (ii) the inputs and assumptions underlying Raymond James' use of the multiples ranging from 13.0x to 15.0x; (iii) the Company's terminal values; (iv) the inputs and assumptions underlying Raymond James' use of the discount rate range of 11.0% to 13.0%; and (v) the number of diluted shares outstanding of Company common stock.

37.     With respect to fees earned by Raymond James during the two years preceding the date of the Raymond James opinion, the Proxy Statement fails to disclose the fees earned as a result of Raymond James' engagement or performance of the following services for BOCH, Columbia, or their respective subsidiaries: (i) Raymond James has provided services to BOCH in connection with a share repurchase program, for which Raymond James was paid commissions and may be paid commissions in the future; (ii) Raymond James has engaged in certain fixed

income and other trading activities with Merchants Bank, for which Raymond James has earned income; and (iii) Raymond James has engaged in certain fixed income trading activity with Columbia Bank, for which Raymond James has earned income.

38. Moreover, the Proxy Statement fails to disclose the approximate cash amount Raymond James will be paid by BOCH for advisory services in connection with the Proposed Transaction.

39. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

40. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

46. The Defendants knew or were negligent in not knowing that the Proxy Statement

is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

47. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

49. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of BOCH within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of BOCH, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55. In addition, as set forth in the Proxy Statement at length and described herein, the

Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 9, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*